## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **CONNECTICUT GENERAL LIFE INSURANCE COMPANY,**<br>                    Plaintiff,<br><br>v.<br><br>**CST INDUSTRIES, INC.,**<br><br>                    Defendant. | CIVIL ACTION<br>No. 05-2029-KHV |

## MEMORANDUM AND ORDER

On January 21, 2005, Connecticut General Life Insurance Company ("Connecticut General") brought this diversity suit against CST Industries, Inc. ("CST"), alleging breach of contract and unjust enrichment. This matter comes before the Court on defendant's <u>Motion To Dismiss Or In The Alternative To Stay Litigation And Compel Arbitration</u> (Doc. #6) filed February 23, 2005.

### Factual Background

Connecticut General provided group medical expense insurance to CST employees under various contracts. Each year, Connecticut General and CST negotiated an annual premium which CST paid under Connecticut General's Cash Management Program ("CMP"), pursuant to terms set forth in CMP riders (collectively, the "Administrative Agreements") and a Letter Agreement dated July 9, 2001. The Letter Agreement was modified by letters dated December 19, 2001, February 21, 2002 and March 5, 2003. Connecticut General alleges breach of contract and unjust enrichment arising out of the Letter Agreement, the Administrative Agreements and the Insurance Policies. It seeks $1,107,062.00 for breach of the Insurance Policies, the Administrative Agreements and the

Letter Agreement.

CST denies that it owes Connecticut General any amount. The Letter Agreement of July 9, 2001 required binding arbitration of certain disputes, as follows:

> Resolution of Disputes – Arbitration
> If a dispute or controversy arises under this Agreement or the CMP Rider, it shall be referred for decision by arbitration in Kansas City, Kansas by an arbitrator selected by the parties. The proceeding shall be governed by the Rules of the American Arbitration Association. Arbitration shall be the exclusive remedy for the settlement of disputes arising under this Agreement or the CMP Rider. The decision of the arbitrator shall be final, conclusive and binding, and no action at law or in equity may be instituted by either party with respect thereto other than to enforce the award of the arbitrator(s).

Exhibit A at 5. It also provided that "the amount of the Supplemental Premium as set forth above is not subject to arbitration or litigation."

The Letter Agreement provided that in addition to the base premium, CST would pay a supplemental premium calculated as follows:

> The amount of Supplemental Premium due on each monthly premium due date shall be calculated in accordance with the following formula:
>
> (a) The sum of the Maximum Monthly Payments, as defined in the Maximum Monthly Payment section below; LESS
> (b) The total of payments issued from your CMP account and fundable by you in accordance with the provisions of the Maximum Monthly Payment section below, LESS
> (c) That portion of Supplemental Premium, if any, which is held by Connecticut General.
>
> The Supplemental Premium amount identified above may be changed by Connecticut General, as permitted by the CMP rider, by delivering to you a written notice (the "Notice"), which notice may be delivered together with a premium rate change-renewal notice, or separately, specifying the new Supplemental Premium amount and the date on which the new Supplemental Premium amount is to become effective. If the notice is delivered together with a premium rate change-renewal notice, the effective date of the Notice shall coincide with premium rate change-renewal, unless otherwise stated in the Notice.

July 9, 2001 letter at 2.

In letters dated December 19, 2001, February 21, 2002 and March 5, 2003, Connecticut General exercised the CMP rider option and issued written notices to specify new Supplemental Premiums.[1]

Overall, Connecticut General asserts that CST owes $1,107,062, plus interest and attorney's fees and costs. This amount includes a supplemental premium of $612,652 due under a March 9, 2003 amendment to the Letter Agreement and $494,410 for an unpaid 2002 premium.

## **Analysis**

CST asks the Court to dismiss or stay this action pending arbitration under the Letter Agreement of July 9, 2001. Connecticut General opposes the motion, asserting that the Letter Agreement specifically exempts from arbitration claims regarding the Supplemental Premiums.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., ensures that written arbitration agreements in maritime transactions and transactions involving interstate commerce are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Federal policy favors arbitration agreements and requires that the Court rigorously enforce them. Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987) (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)); see Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 122-23 (2001) (arbitration agreements in employment

---

[1] In it response brief, Connecticut General provides the following additional information: The Supplemental Premium is based on a fixed amount and is part of the negotiated annual premium. The last modification to the Letter Agreement dated March 9, 2003 sets this fixed amount at $612,652, which Connecticut General claims was due upon termination and which Connecticut General asserts as part of its claim in this action. A separate portion of the Connecticut General claim pertains to the 2002 policy year, in the amount of $494,410 (the "2002 Premium"). The complaint does not allege the facts regarding that claim.

contracts generally enforceable). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

> FAA Section 3 states:
>
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

The question of arbitrability – whether the parties agreed to arbitrate a particular dispute – is an issue for judicial determination. AT&T Techs., Inc. v. Communication Workers Of Am., 475 U.S. 643, 649 (1986). Before granting a stay or dismissing a case pending arbitration, the Court must determine that the parties have a written agreement to arbitrate. See 9 U.S.C. §§ 3 and 4; Avedon Eng'r, Inc. v. Seatex, 126 F.3d 1279, 1283 (10th Cir. 1997). The existence of an arbitration agreement "is simply a matter of contract between the parties; [arbitration] is a way to resolve those disputes– but only those disputes–that the parties have agreed to submit to arbitration." Id.; see PaineWebber Inc. v. Elahi, 87 F.3d 589, 594 (1st Cir. 1996) (arbitration is matter of contract law and party can only be made to submit to arbitration those disputes which it has agreed to submit).

Connecticut General does not dispute that the Letter Agreement contains a broad general arbitration clause, or that its claims arise under the Letter Agreement and the CMP rider. Connecticut General further acknowledges that where (as here) an agreement contains an arbitration provision, a "presumption of arbitrability arises." See AT&T Techs., 475 U.S. at 650. Connecticut General

points out that a party can overcome the presumption of arbitrability, however, where an express provision excludes a particular grievance from arbitration. See Denhardt v. Trailways, Inc., 767 F.2d 687, 689 (10th Cir. 1985) (two ways to overcome presumption of arbitrability: (1) where express provision excludes particular grievance or (2) where court concludes with positive assurance that agreement does not cover disputed issue). Connecticut General states that as part of its claim, it seeks to recover a Supplemental Premium of $612,652 imposed by letter dated March 9, 2003. Connecticut General points to the Letter Agreement that "the parties agree that the amount of the Supplemental Premium as set forth above *is not subject to arbitration or litigation*."[2] See Exhibit A at 2 (emphasis added). Connecticut General argues that this clause specifically excludes from arbitration *any* issues relating to the Supplemental Premium. See Creative Telecomms. Inc. v. Breeden, 120 F. Supp. 2d 1225, 1236 (D. Hawaii 1999) (excluding issue from arbitration requires clearly expressed intent not to arbitrate issue); see O'Donnell v. First Investors Corp., 872 F. Supp. 1274, 1276-77 (despite policy favoring arbitration, courts should refrain from forcing parties into arbitration when such was clearly not their intent). Connecticut General asserts that the parties exempted any issues relating to the Supplemental Premium because they agreed that Supplemental Premiums should not be subject to litigation or arbitration merely because in hindsight, one party wanted to re-write the deal.

CST responds that the broad arbitration clause controls, and cites the Letter Agreement provision that "the parties agree that the amount of the Supplemental Premium as *set forth above* is not subject to arbitration or litigation" (italics added). Based on this language, CST argues that the

---

[2] CST did not quote or cite this provision in its initial brief.

exception is directed only at the Supplemental Premium formula which is set forth immediately before the arbitration/litigation exclusion. CST points out that *after* the limitation, the Letter Agreement provides for changes to the Supplemental Premium amount, and that the arbitration limitation does not apply to disputes or controversies which relate to changes in the Supplemental Premiums. Therefore, when Connecticut General opted not to use the Supplemental Premium formula "*set out above*," and decided to increase the Supplemental Premium, the exclusion from arbitration clause became inapplicable.

CST's reading of the arbitration limitation appears to be reasonable. To the extent that the Letter Agreement is ambiguous on the question of whether Supplemental Premiums *not* calculated under the formula are arbitrable, the Court must rule in favor of arbitrability. See Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 798 (10th Cir. 1995). Further, Connecticut General has not explained to the Court precisely how its claims fall under the narrow exemption from arbitration for "the amount of the Supplemental Premium as set forth above." See Denhardt, 767 F.2d at 689 (to overcome presumption of arbitrability, must show that express provision excludes particular grievance).

Finally, the Court notes that plaintiff's complaint seeks interest and attorneys' fees. Because the arbitration clause does not exclude these items, they fall within the scope of arbitration clause.

**IT IS THEREFORE ORDERED** that defendant's Motion To Dismiss Or In The Alternative To Stay Litigation And Compel Arbitration (Doc. #6) filed February 23, 2005 be and hereby is **SUSTAINED** in that the Court finds that this case is subject to arbitration. **The case is therefore STAYED pending arbitration**.

**IT IS FURTHER ORDERED** that the parties file status reports with the Court every 90 days during the stay.

Dated this 14th day of June, 2005 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge
